Document Page 1 of 7

```
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - - -x

In re:                                  :

BENJAMIN B. VITI                        :    BK No. 10-11157
            Debtor                            Chapter 11

- - - - - - - - - - - - - - - - - -x
BENJAMIN B. VITI                        :
            Plaintiff
v.                                      :    A.P. No. 10-1054

FRANK MATTOS, an Individual             :
d/b/a MATTOS & ASSOCIATES, LLC
            Defendant
- - - - - - - - - - - - - - - - - -x
```

## DECISION AND ORDER

APPEARANCES:

    Vincent A. Indeglia, Esq.
    Attorney for Debtor/Plaintiff
    INDEGLIA & ASSOCIATES
    300 Centerville Road, Suite 300 East
    Warwick, Rhode Island 02886

    John O. Mancini, Esq.
    Attorney for Defendant
    LAW OFFICES OF MICHAEL A. KELLY
    128 Dorrance Street
    Providence, Rhode Island 02903

**BEFORE ARTHUR N. VOTOLATO, United States Bankruptcy Judge**

BK No. 10-11157; A.P. No. 10-1054

Heard on Plaintiff Benjamin B. Viti's Motion to Adjudge Frank Mattos, d/b/a Mattos & Associates, LLC ("Mattos"), in Willful Contempt for failing to comply with certain terms of this Court's May 12, 2011 Order.  For the reasons discussed below, Viti's Motion is **GRANTED** in part, and **DENIED** in part.

## BACKGROUND AND FACTS

On March 11, 2011, after what may conservatively be described as a mutually antagonistic landlord/tenant relationship, and after a lot of acrimonious litigation, Viti and Mattos purportedly reached a settlement agreement.  The amount of distrust that has existed between these parties is seen in their insistence on immediately putting in writing and executing a handwritten agreement, rather than risk a "breakdown of the settlement discussions pending the drafting of a typewritten document."  Plaintiff's Memorandum of Law, p. 3.

The agreement required, among other things, for the parties to dismiss and release all of their respective claims.  Also, Mattos agreed to make a single payment to Viti in the amount of $25,937, and to vacate the property by April 10, 2011, leaving all fixtures in place, except for certain specific items noted in the agreement. Finally, it was agreed that Viti would prepare and file a Joint Motion to Compromise, along with a proposed Consent Order.[1]  Said

---

[1] Notwithstanding what either Viti or Mattos thinks, it is this Court's expectation that a Consent Order constitutes the signed agreement of the parties.

1

BK No. 10-11157; A.P. No. 10-1054

motion was filed on March 23, 2011, and a hearing was held on April 6, 2011.  Because Mattos neither appeared at the April 6 hearing nor filed an opposition, the Motion was granted upon a finding that the settlement, as represented, was fair and reasonable.  On April 10, Mattos vacated the property, but he failed to deliver any money or return the keys to the property.  On April 25, 2011, a Proposed Order was submitted, and on May 12, 2011, after the expiration of the objection period, the Order was entered.  Again, Mattos did nothing.

On May 26, 2011, after still more posturing, Viti filed a motion to adjudge Mattos in contempt.  On September 28, 2011, five days prior to the hearing on the Contempt Motion, Mattos delivered a check to Viti in the amount of $25,937, erroneously assuming that this litigation would thereby be ended.  The hearing on the contempt motion went forward as scheduled.

## DISCUSSION

Although the parties have raised questions of jurisdiction and the Court's power to enforce its own Orders, these are clearly meritless red herrings, and just another excuse for these people to continue litigating.  The only issue before the Court at this time is whether Mattos was in contempt in failing or refusing to comply with the terms of the agreement incorporated in the May 12, 2011 Order, specifically, his failure to pay Viti $25,937, and holding onto the keys after he vacated the property.  After all of the pretrial bombast and cross-accusations, the hearing of this matter

2

was a huge anticlimax.

Without offering evidence on the point, Viti urges this Court to rule that Mattos's actions were willful. Perhaps as a surprise to both Mattos and Viti, because "the purpose of civil contempt proceedings is remedial, the defendant's intent in committing the contempt is not material." 17 Am. Jur. 2d Contempt §27. It is sufficient that Mattos failed to comply with the terms of the settlement agreement as incorporated in the May 12, 2011 Order. Completely avoiding the point that he needed to address, Mattos argues that he did not act in bad faith and that his withholding of the payment was solely intended to be used as leverage to resolve all claims and issues between the parties. Regardless of the dubious veracity of that assertion, it is irrelevant, as good faith is not a defense to a claim of civil contempt. *See id.*

Based on this record, I find that Mattos's failure to comply with the terms of this Court's May 12, 2011 Order approving the settlement was intentional, and Mattos was therefore in contempt. However, in light of the entire record in these proceedings, it would be a stretch to find that Mattos's conduct was unilaterally unreasonable. Put another way, it is clear that neither party was averse to antagonizing the other, and that neither was interested in engaging in a sensible resolution of their differences.

BK No. 10-11157; A.P. No. 10-1054

Mattos claims that he was ready to tender payment, but only after a "walk through" with Viti which, he belatedly and unpersuasively argues was necessary to protect him from later claims of waste or damage. I wonder why, if Mattos really believed that a walk through was such a critical pre-condition to payment, that issue was not included in the settlement agreement. Assuming, but only *arguendo*, that the omission was somehow excusable oversight, Mattos needed only to object and appear at the hearing on the Motion to Compromise, in order to have the issue resolved. Instead, the absent Mattos remained silent, and once the agreement was approved and incorporated into the Order, like it or not, he was bound to comply with its terms, and had no right to unilaterally impose additional conditions. Accordingly, in failing or refusing to tender payment as required, Mattos was in contempt of the Order incorporating the agreement to which he (Mattos) is a party.[2]

Had Mattos not tendered payment of his obligation in full prior to the October 3, 2011 hearing, he would have been adjudged in contempt, ordered to immediately pay the $25,937, and would likely have faced monetary sanctions and other inconveniences. However, by tendering payment, albeit at the eleventh hour, Mattos essentially

---

[2] In unsolicited post-hearing Memoranda, both Viti and Mattos stressed that the standard to be applied is "clear and convincing." Viti has easily met his burden, based on a standard which Mattos agrees is the correct one.

BK No. 10-11157; A.P. No. 10-1054

purged himself of a more serious offense, and remained in technical contempt, only.

On the other side of this ineptly handled litigation, Viti's counsel unblushingly urges the Court to find Mattos's actions so egregious as to merit sanctions amounting to treble damages. The record, however, lacks specific evidence of egregious conduct on Mattos's part. To the contrary, Viti's testimony fell far short of what was proferred in his Memorandum of Law, and represented at every pre-trial opportunity, of what the Court would hear under oath, but which was never offered. Both counsel would do well to confine their pre-trial representations to their actual proof, i.e., the testimony of both parties elicited at the hearing bore no similarity to the vitriol and rhetoric so freely dispensed by both counsel while this dispute was pending.

When one views the sum of the evidence, it is clear that Viti's alleged insistence upon payment, in the face of a request for a walk through (which Viti conceded would be easily accomplished, as his office was just across the street) played some part in delaying the resolution of this matter. Finally, the email trail in evidence clarifies nothing other than the fact that both Viti and Mattos love to litigate, with neither in the least inclined to end the litigation.

The Court is mindful that Mattos's delaying tactics resulted in

5

BK No. 10-11157; A.P. No. 10-1054

additional legal fees, as Viti repeatedly made efforts to collect his money. Based upon all of the foregoing, I find Mattos to be in technical contempt and order him to pay one-half of the legal fees incurred by Viti in his collection efforts.[3] After examining his itemized bill, the Court sets $2,500 as a reasonable estimate, Mattos is ordered to pay said amount to Viti within five days, and he is directed to turn over all remaining keys to the property, simultaneously.

Enter:

*Arthur N. Votolato*
Arthur N. Votolato
U.S. Bankruptcy Court

Entered on Docket: 11/29/11

---

[3] In his Post-Hearing Memorandum, Mattos acknowledges that the imposition of such a sanction is within the Court's power and suggests that the award must be "reasonably related to the extent and willfulness of the contempt." (*Africano v. Castelli*, 837 A.2d 721, 729 (R.I. 2003)). The Court finds this award to be so related.